IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THOMAS B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case #4:21-cv-00035-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Thomas B.'s appeal from the decision of the Social Security Administration denying his application for disability and disability insurance benefits. The Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether their findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although they are not required to discuss all of the evidence.[4] If

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.  PROCEDURAL HISTORY

In January 2019, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on March 24, 2018.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on August 24, 2020.[10] The ALJ issued a decision on September 9, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on January 29, 2021,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

On April 2, 2021, Plaintiff filed his complaint in this case.[14] On August 4, 2021, both parties consented to a United States Magistrate Judge conducting all proceedings in the case,

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 220–21.

[9] *Id.* at 109, 110.

[10] *Id.* at 37–69.

[11] *Id.* at 18–36.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 422.210(a).

[14] Docket No. 2.

2

including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on September 15, 2021.[16]

Plaintiff filed his Opening Brief on November 12, 2021.[17] The Commissioner's Answer Brief was filed on January 5, 2022.[18] Plaintiff filed his Reply Brief on January 25, 2022.[19]

B.     MEDICAL HISTORY

Plaintiff alleges disability because of back pain, anxiety, depression, and PTSD.[20] Plaintiff asserts having PTSD from his over 20 years of service as a police officer.[21] He states that because of his issues with mental health he has removed himself from social situations.[22] Although Plaintiff's wife provides assistance in many activities, Plaintiff still helps take care of his children, drives, travels, shops, and handles finances.[23] Plaintiff also works on his farm,[24] fixes fences,[25] and volunteers for the fire department.[26]

---

[15] Docket No. 10.

[16] Docket Nos. 12, 13.

[17] Docket No. 16.

[18] Docket No. 20.

[19] Docket No. 21.

[20] R. at 220, 242.

[21] *Id.* at 348, 351, 354, 356–57, 359, 361–62, 364–65, 368–69, 371–73, 375, 388, 391, 395, 398, 400, 403, 405,406–407, 409, 411, 415, 417, 419–22.

[22] *Id.* at 343, 348, 351, 354, 356–57, 359, 361–62, 364–65, 368–69, 371–73, 375, 380, 388, 391, 395, 398, 400, 403, 405, 406–407, 409, 411, 415, 417, 419–22.

[23] *Id.* at 274–76.

[24] *Id.* at 380.

[25] *Id.* at 390.

[26] *Id.* at 372.

Plaintiff received some treatment for his alleged disabilities including acupuncture,[27] counseling,[28] medication,[29] dieting,[30] and exercise.[31] The medical records present a mixed picture regarding Plaintiff's improvement. During certain visits, Plaintiff reported that he was feeling happy and relaxed and noticed that his back pain was improving.[32] In October 2018, Plaintiff reported that he enjoyed working outside and going on vacation with his family.[33] In January 2019, Plaintiff started volunteering for the fire department.[34] However, in April 2019, Plaintiff reported having "some issues with flashbacks and episodes of PTSD" and was avoiding social situations, including attending church.[35]

Plaintiff started acupuncture treatment with Jennifer Myers, NPT, in January 2018 at which point medical examinations revealed that Plaintiff had inflammation in his spine.[36] When Plaintiff returned to NPT Myers in January 2019, he reported having anger issues, depression, anxiety, and stress.[37] However, in February 2019, NPT Myers completed a Mental Capacity Assessment ("MCA") of Plaintiff, which indicated that Plaintiff had no limitations in

---

[27] *Id.* at 357–75.
[28] *Id.* at 505–24.
[29] *Id.* at 290, 299, 316.
[30] *Id.* at 355, 358, 386, 402, 487.
[31] *Id.* at 350, 352, 355, 373, 421, 487, 527–28.
[32] *Id.* at 360–75.
[33] *Id.* at 368.
[34] *Id.* at 371.
[35] *Id.* at 374.
[36] *Id.* at 348.
[37] *Id.* at 371.

understanding, remembering, applying information, or interacting with others.[38] The MCA further indicated that Plaintiff had zero to mild limitations in concentration, persistence, or maintaining pace and one marked limitation in his ability to maintain personal hygiene and appropriate work attire.[39]

Plaintiff also received treatment from Scott Noorda, M.D. in April 2018.[40] During this medical visit, Plaintiff reported that his panic attacks were subsiding, but he was having trouble sleeping.[41] Additionally, despite some improvements in joint pain, Plaintiff still had lower back pain.[42]

In April 2019, Plaintiff was evaluated by consultative examiner, Eileen Booth, Ph.D., for his mental illnesses.[43] Plaintiff reported having extreme anxiety, depression, and was suffering from flashbacks of his days in law enforcement.[44] On a Mini-Mental Status Examination, Plaintiff scored a 27 out of 30, which is above the cut-off of 23 points that would suggest severe mental impairment.[45] Plaintiff was found to be within "normal limits" and did not appear to have significant cognitive impairments.[46] Dr. Booth also reported that Plaintiff was logical and goal

---

[38] *Id.* at 335–37.
[39] *Id.* at 336.
[40] *Id.* at 358.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 426–32.
[44] *Id.* at 427.
[45] *Id.* at 430.
[46] *Id.*

oriented, but he appeared depressed, was lacking in self-care and "is almost agoraphobic in his fear of going out and his possible overreactions in situations."[47]

In May 2019, Julia Lewis, D.O., examined Plaintiff for his disability claim and reported that he was able to care for himself, drive, cook, and clean.[48] Although Plaintiff complained of back pain, Dr. Lewis determined that he did not have any physical limitations.[49]

Starting in December 2019, Plaintiff attended several counseling sessions with Jaime Bacon, L.C.S.W.[50] Ms. Bacon reported that Plaintiff struggled with PTSD, anxiety, and depression.

State agency physicians also reviewed a portion of the record.[51] Although they disagreed on whether Plaintiff's mental impairments were severe, they ultimately concluded that Plaintiff retained abilities to perform medium work.[52]

C.     HEARING TESTIMONY

---

[47] *Id.* at 430, 432.
[48] *Id.* at 438.
[49] *Id.* at 441–42.
[50] *Id.* at 505–24.
[51] *Id.* at 97–107, 111–26.
[52] *Id.* at 107, 126.

At the hearing before the ALJ, Plaintiff testified that he was unable to work because of back pain, anxiety, depression, and PTSD.[53] Plaintiff stated that he suffers from panic attacks and worries about working with people who may push him over the edge.[54] Plaintiff noted that he takes anxiety medication and participates in counseling.[55]

D.  THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 24, 2018.[56] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, anxiety, depression, and PTSD.[57] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[58] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work and routine tasks at a consistent pace with occasional interaction with coworkers but no contact with the public.[59] At step four, the ALJ determined that Plaintiff could not perform any past relevant

---

[53] *Id.* at 48–50.
[54] *Id.* at 53–54.
[55] *Id.* at 48–49.
[56] *Id.* at 23.
[57] *Id.* at 24.
[58] *Id.* at 24–25.
[59] *Id.* at 26.

work.[60] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[61]

### III.  DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence. For applications filed on or after March 27, 2017, an ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[62] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are the supportability and consistency.[63] "For supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase."[64] "Consistency, on the other hand, is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."[65]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[66] The ALJ must explain

---

[60] *Id.* at 31.

[61] *Id.* at 31–32.

[62] 20 C.F.R. § 404.1520c(a).

[63] *Id.* § 404.1520c(a), (b)(2).

[64] *John H. v. Saul*, No. 2:20-CV-00255-JCB, 2021 WL 872320, at *4 (D. Utah Mar. 8, 2021) (internal quotation marks and citation omitted).

[65] *Id.*

[66] 20 C.F.R. § 404.1520c(b).

8

how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[67] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[68] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[69]

Plaintiff challenges the ALJ's treatment of the opinion of consultative examiner Dr. Eileen Booth. The ALJ found Dr. Booth's opinions unpersuasive because they were inconsistent with other medical records.[70] Dr. Booth opined that Plaintiff could "perform simple work, but [was] very limited in going outside his home," but the ALJ found that other medical records showed that Plaintiff was "upbeat" and "doing better with interaction and involvement in activities out of the home."[71] The ALJ cited to two records from November 2017 which described Plaintiff as "upbeat"[72] and one May 2020 record reporting that Plaintiff had "moments

---

[67] *Id*. § 404.1520c(b)(2).

[68] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)

[69] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[70] R. at 30.

[71] *Id*.

[72] *Id.* at 344, 381.

9

in public where he has an episode but has been able to control himself," he "[h]as not lashed out," and he "[h]as improved in that overall."[73]

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff first argues that the ALJ determination relies on evidence from several months prior to the alleged onset date of Plaintiff's disability, March 24, 2018. Although the ALJ cited to a November 2017 record indicating that Plaintiff was "upbeat," the ALJ did not deny Plaintiff's claim solely based on these two pieces of evidence. Rather, the ALJ made his determination based on the record as a whole and reviewed evidence from November 2017 to June 2020.[74] Notably, the record indicates that in October 2018, Plaintiff reported that he was "working outside a lot and enjoying it" and that he "went on vacation and enjoyed himself with his family."[75] In January 2019, Plaintiff started volunteering with the fire department.[76] In February 2019, Plaintiff was feeling more energetic and in a better mood.[77] In September 2019, Plaintiff felt stable despite having some episodes of anxiety and depression.[78] Moreover, an ALJ can consider evidence even if it falls outside the relevant time period.[79] Thus, the ALJ's citation to evidence before the alleged onset date does not constitute reversible error.

---

[73] *Id.* at 491.

[74] *Id.* at 27–29.

[75] *Id.* at 368.

[76] *Id.* at 371.

[77] *Id.* at 373.

[78] *Id.* at 490.

[79] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").

Plaintiff also argues that the ALJ only cited to one example supporting the proposition that Plaintiff was "doing better with interaction and involvement with activities out of the home."[80] Plaintiff states that "[t]he ALJ is not permitted to focus on just one notation when the actual evidence of record shows a more serious picture."[81] This argument is without merit. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[82] The ALJ cited to one piece of evidence that was generally consistent with the entire record. As previously noted, the record indicates that Plaintiff was able to and enjoyed working on his farm; he also started volunteering for the fire department and went on vacation with his family. Lastly, the record indicates several occasions where Plaintiff reported frequent improvements in his mood and mental health.[83] The ALJ's findings are supported by substantial evidence and the record reveals that the ALJ considered all of the evidence even if every piece was not discussed.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision of the Commissioner.

---

[80] R. at 30 (citing *id.* at 491).

[81] Docket No. 16, at 7 (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 481 (1951)).

[82] *Clifton*, 79 F.3d at 1009–10.

[83] R. at 415–21, 423, 487–90, 528, 530–32.

DATED this 9th day of May, 2022.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge